Joshua G. Konecky, SBN 182897
jkonecky@schneiderwallace.com
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

*Settlement Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GRADY, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   vs.<br><br>RCM TECHNOLOGIES, INC.,<br><br>       Defendant. | Case No.: 5:22-cv-00842 JLS-SHK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** February 21, 2025<br>**Time:** 10:30 a.m.<br>**Location:**<br>Courtroom 8A, 8th Floor<br>First Street U.S. Courthouse<br>350 West 1st Street,<br>Los Angeles, CA 90012<br><br>Complaint Filed: February 7, 2022 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on **February 21, 2025, at 10:30 a.m**., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Josephine L. Staton, Courtroom 8A, 8th Floor, United States District Court, Central District of California, First Street U.S. Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Plaintiff Barbara Grady ("Plaintiff") will hereby move this Court for an Order granting final approval of the Class Action and PAGA Settlement Agreement between Plaintiff and Defendant, which was preliminarily approved by the Court on November 13, 2024.

The Motion is made following the conference of counsel pursuant to L.R. 7-3.

This Motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Joshua G. Konecky in support of the Motion, including the Joint Stipulation of Class Action and PAGA Settlement and Release, attached as Exhibit A to the Declaration; the Declaration of Alexander Williams, Vice President of Operations at JND Legal Administration (JND), including a copy of the finalized Notice of Class Action Settlement sent by JND by mail and email to the Settlement Class Members, attached as Exhibits B and C to the Declaration; such oral argument as may be heard by the Court; and all other papers on file in this action.


Dated: December 26, 2024          Respectfully Submitted,

                                  **SCHNEIDER WALLACE**
                                  **COTTRELL KONECKY LLP**


                                  */s/ Joshua G. Konecky*
                                  Joshua G. Konecky
                                  Attorney for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................ 2

III.  PROCEDURAL HISTORY ........................................................... 4

IV.   THE COURT'S ORDERS REGARDING PRELIMINARY
      APPROVAL .................................................................................. 6

V.    ISSUIANCE OF THE SETTLEMENT NOTICE AND CAFA NOTICE .......... 9

VI.   KEY TERMS OF THE PROPOSED SETTLEMENT ..................................... 10

VII.      ARGUMENT ......................................................................... 14

      A.    The Court Should Grant Final Approval to the Class Action
            Settlement ........................................................................... 14

            1.    The standards for final approval ...................................... 14

            2.    The Class representative and Class counsel have adequately
                  represented the Class ...................................................... 15

            3.    The Settlement was negotiated at arms-length .................. 17

            4.    The relief provided to the Class is fair, reasonable, and
                  adequate taking into account the strengths, risks, potential
                  exposure, and other relevant factors .................................. 17

            5.    The Settlement is fair, reasonable, and adequate taking into
                  account the method of distributing relief to the Class .......... 19

            6.    The Settlement is fair, reasonable, and adequate taking into
                  account the proposed award of attorney's fees .................... 20

            7.    The proposed Settlement treats Class Members equitably
                  relative to each other ...................................................... 21

            8.    The proposed cy pres recipient is appropriate .................... 21

      B.    The Court Should Approve the PAGA Portion of the Settlement ............ 22

VIII.     CONCLUSION ....................................................................... 25

IX. REQUEST TO BE EXUSED FROM L.R. 11-6.1............................................. 25

1

## TABLE OF AUTHORITIES

2

## CASES

3

*Arias v Superior Ct. (Dairy),*
4      46 Cal.4th 969 (2009)...............................................................13

5
*Bolton v. U.S. Nursing Corp.*
6      (N.D. Cal. Oct. 18, 2013) 2013 WL 5700403.........................23

7
*Brown v. Hain Celestial Grp.,*
       2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18, 2016).....................17
8

9
*Carlin v. DairyAmerica, Inc.,*
       380 F.Supp.3d 998 (E.D. Cal. 2019) ......................................21
10

11
*Churchill Vill. L.L.C. v. Gen. Elec.,*
       361 F.3d 566 (9th Cir. 2004) ..................................................15

12
*Class Plaintiffs v. City of Seattle,*
13      955 F.2d 1268 (9th Cir. 1992) ................................................15

14
*Echavez v. Abercrombie & Fitch Co., Inc.,*
15      Case No. CV 11–09754–GAF, 2017 WL 3669607
        (C.D. Cal., March 23, 2017)..........................................23, 24
16

17
*Flores v. Starwood Hotels & Resorts Worldwide, Inc.,*
       253 F. Supp. 3d 1074 (C.D. Cal. 2017)............................22, 23
18

19
*Hanlon v. Chrysler Corp.,*
       150 F.3d 1011 (9th Cir. 1998) ................................................15
20

21
*Hopson v. Hanesbrands Inc.*
       (N.D. Cal. Apr. 3, 2009) 2009 WL 928133 ...........................22

22
*In re Bluetooth Headset Prods. Liab. Litig.,*
23      654 F.3d 935 (9th Cir. 2011) ..................................................15

24
*In re Syncor ERISA Litig.,*
25      516 F.3d 1095 (9th Cir. 2008) ................................................15

26
*In re: Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,*
       618 F.3d 988 (9th Cir. 2010) ..................................................20
27

28

*Jack v. Hartford Fire Ins. Co.*
  (S.D. Cal. Oct. 13, 2011) 2011 WL 4899942 ..........................................23

*Jordan v. NCI Group., Inc.*,
  Case No. EDCV 16-1701 JVS (SPx), 2018 WL 1409590
  (C.D. Cal. Jan. 5, 2018)..........................................................................22, 24

*Linney v Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..........................................................15, 17

*McKenzie v. Fed. Express Corp.*
  (C.D. Cal. Jan. 23, 2012) 2012 WL 12882124 .....................................23

*Nat'l Rural Telecomm's Coop v. Directv, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)............................................................17

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) .................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..........................................................15, 17

*Reed v. Thousand Oaks Toyota*
  (Cal. Super. Ct. Apr. 8, 2013) 2013 WL 8118716.................................23

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................15

*Uribe v. Crown Building Maintenance Co.*,
  70 Cal.App.5th 986 (2021)......................................................................24

*Vargas v. Cent. Freight Lines, Inc.*,
  Case No.: 16-cv-00507-JLB, 2017 WL 4271893 (S.D. Cal., Sept. 25, 2017).......22

**STATUTES**

Cal. Labor Code § 2699(e)(2)...................................................................22

Cal. Labor Code § 2699(i) ........................................................................23

Cal. Labor Code § 2699(m) ...............................................................12, 23

Cal. Labor Code § 2699(s)(2)..............................................................21, 24

Stats.2016, c. 31 (S.B.836), §189, eff. June 27, 2016 ..............................23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## OTHER AUTHORITIES

2024 Cal. Legis. Serv. Ch. 44 (A.B. 2288)..........................................................12, 23

## RULES

Fed. R. Civ. P. 23 ............................................................................ passim

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................8

Fed. R. Civ. P. 23(e) ........................................................................ passim

Fed. R. Civ. P. 23(e)(2) .........................................................................1, 7, 14

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................................7

Fed. R. Civ. P. 23(h)...........................................................................1, 8, 20

Fed. R. Civ. P. 30(b)(6)...............................................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff seeks final approval of the proposed Class Action and PAGA Settlement Agreement that the Court preliminarily approved on November 13, 2024 (Dkt. 48). It is a non-reversionary settlement to resolve California wage and hour claims of non-exempt nurses employed by Defendant RCM to work at Covid testing and vaccination sites in California between March 1, 2020 and March 7, 2023.

Since the Court's Preliminary Approval Order, the parties have worked with the Court-appointed Settlement Administrator, JND Legal Administration (JND), to ensure implementation of the Settlement Notice process approved by the Court in its Preliminary Approval Order. On December 11, 2024, the Settlement Administrator sent the Court approved Settlement Notice by U.S. mail to the 1,097 Settlement Class Members identified in the Class Data provided by Defendant and by email to the approximately the 1,077 Settlement Class Members for whom Defendant had email addresses. It will forward any undeliverable Notices to new addresses obtained from the post office and/or skip tracing. The Settlement Administrator also activated the toll-free information line and the Settlement website on December 11, 2024.

The last day for Settlement Class Members to postmark timely objections, disputes and requests for exclusion is January 27, 2025. Plaintiff will update the Court as to any objections, disputes, and requests for exclusion received with her Reply Brief to be filed by February 14, 2025.

For the reasons previously discussed in connection with Plaintiff's Motion for Preliminary Approval and highlighted again below, the proposed Settlement meets the standards for final approval under Rule 23(e)(2) and applicable law. Additionally, as set forth below, the PAGA portion of the Settlement also should be approved because its terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. Finally, Plaintiff is filing separate motions for approval of reasonable attorneys' fees and costs pursuant to Rule 23(h) and for a service award to

the Class Representative. Subject to any findings the Court might make based on the Class Member response to the Settlement Notice or otherwise at the Final Approval Hearing, or any other developments that may occur, Plaintiff requests that the Court grant final approval of the Settlement.

## II.    BACKGROUND

A description of the claims and citation to the evidence presented during the case can be found in Plaintiff's Motion for Class Certification, filed June 21, 2024 (ECF No. 41), and Plaintiff's Motion for Preliminary Approval, filed July 26, 2024 (ECF No. 44).

In summary, Plaintiff Barbara Ann Grady worked as a temporary nurse for Defendant RCM Technologies (USA), Inc. (RCM) during the Covid-19 pandemic. A component of RCM's business is healthcare staffing. It has a "travel division" that hires and assigns nurses to work at various healthcare clinics and facilities, including in California. During 2020-2022, approximately 90% of the RCM's nurse placement business in California was for Covid testing.

RCM had one client, the County of San Bernardino, for Covid testing at approximately 25 "pop up" centers, and two other clients, Ginkgo Concentric and the Los Angeles Unified School District (LAUSD), for Covid testing and/or vaccination in the schools – Ginkgo had approximately 25 school sites, and LAUSD had approximately 15 school sites. There was a high degree of similarity between the job duties of the nurses across these placements.

During the Settlement Class Period (March 1, 2020 to March 7, 2023) RCM placed approximately 382 individuals to work at Covid testing pop-up sites for San Bernardino County, and a total of 721 individuals to perform Covid testing and/or vaccinations at K-12 school sites – 612 for Ginkgo and 109 for LAUSD. During the Settlement Class Period, these individuals worked approximately 26,580 shifts in the

pop-up sites and 35,760 shifts in the K-12 schools.  The Covid testing placements rarely occur anymore.

As more fully described in the Motion for Class Certification, Plaintiff maintains that RCM failed to live up to its affirmative legal duty to provide meal and rest periods to its employees, and to prevent off-the-clock work, at the Covid testing and vaccination sites during the pandemic. *See* ECF No. 41 at 11:4-16:21.  For example, Plaintiff alleges that RCM over-relied on its clients to provide the opportunity for compliant meal and rest periods, and to ensure that all compensable time was recorded on the timecards. *Id.* at 11:4-13:4.  However, as Plaintiff further maintains, RCM's clients did not have the contractual obligation, financial incentive, or administrative capacity to perform this function, and RCM did not sufficiently monitor the working conditions to safeguard the employees' rights.  *Id.* at 4:16-5:13, 11:12-18.

In addition to deposition testimony and evidence from RCM regarding the common scope of its policies, Plaintiff also cited to testimony from Class Members as anecdotal evidence of the alleged impact that RCM's policies and approach had on the employees working at the client sites. *Id.* at 5:14-7:2.  Plaintiff maintains that RCM's overreliance on the clients to safeguard the rights of its employee had a particularly detrimental impact on the nurses during the Covid-19 pandemic.  *Id.* at 1:10-12, 3:18-4:9, 5:14-7:2, 13:25-14:8.

Plaintiff further cited template emails RCM sent to its nurses in California during the pandemic evidencing what Plaintiff describes as a policy of assuming Class Members received compliant meal periods and automatically deducting time for them from their hours worked. *Id.* at 7:5-13.  Plaintiff maintained that this policy unlawfully shifted the burden onto the nurses to prove that meal periods were not compliant and that there was not a reliable method of communication with RCM for them to meet this burden.  *Id.* at 13:5-14:27.  Plaintiff also cited testimony that RCM permitted its clients to secure verbal agreements with the nurses to waive meal

periods (which Plaintiff alleged were unlawful). *Id.* at 7:20-8:2, 15:1-15. Finally, Plaintiff cited pay records showing the lack of meal and rest period premiums as evidence in support of her argument that RCM did not have a policy for paying meal and rest period premiums in California until the tail end of the Settlement Class Period. *Id.* at 8:3-9:11, 13:25-14:8.

RCM vigorously disputed Plaintiff's claims and theories of liability. For example, RCM maintained that its written policies were lawful on their face, and that employees were instructed about their breaks and told to record all time worked. RCM further argued that insomuch as the nurses worked at the client facilities, its clients had compliant processes and it was lawful for RCM to rely on the clients to supervise the employees and implement schedules to allow for meal and rest periods. RCM also maintained that employees could contact RCM representatives if there were problems, and that the deficiencies Plaintiff alleged did not cause violations on the ground.

## III.  PROCEDURAL HISTORY

On July 22, 2021, Plaintiff submitted a notice letter to the Labor Workforce and Development Agency (LWDA) specifying her claims under the Private Attorneys General Act (PAGA). *See* Declaration of Joshua Konecky in Support of Motions for Final Approval, Reasonable Attorneys' Fees and Costs, and Service Award ("Konecky Decl.") at ¶7. On February 7, 2022, Plaintiff filed a class action and law enforcement complaint in the San Bernardino County Superior Court, which RCM removed on May 19, 2022. *Id.* at ¶8; ECF 1. The parties thereafter agreed to mediation and the production of to facilitate mediation. *Id.* at ¶¶19-22.

After RMC produce written policies and aggregate data, the Parties engaged in a full-day mediation before Michael J. Loeb of JAMS on December 7, 2022. *See* Konecky Decl. at ¶¶11-15. This resulted in a proposed settlement for $1,600,000.00, on behalf of a settlement class consisting of approximately 1,414 individuals who

worked a combined 90,939 shifts for RCM as a traveling nurse or like hourly position anywhere in California between October 8, 2017 and March 7, 2023. *See* ECF No. 31-2 at ¶¶6, 7, 15, 66.

On May 2, 2023, the Court denied preliminary approval of that settlement without prejudice for several reasons, including the failure to show sufficient investigation into the claims and potential value of the case. *See* ECF No. 30.  On September 7, 2023, the Court denied Plaintiff's renewed motion for final approval based on the lack of information provided to assess commonality, typicality, and the reasonableness of the settlement, among other things. *See* ECF No. 35 at 9:5-10:17, 12:21-13:8.  On February 5, 2024, the Court denied the parties' request to conduct a joint survey of class members as part of the settlement approval process and ordered Plaintiff to show cause why the stay should not lift so that litigation may resume.  *See* ECF No. 38.  Plaintiff responded that she would no longer seek approval of the settlement and that litigation should resume. ECF No. 39.  On February 18, 2024, the Court discharged the Order to Show Cause and set a litigation schedule for the case. ECF No. 40.

Following receipt of the Court's Order, the Parties engaged in significant written discovery, depositions, and further investigation directed toward both class certification issues and the merits of the claims.  *See* Konecky Decl. at ¶¶20-22. Defendant produced additional documents and data beyond what was earlier produced.  *Id.*  This consisted of class member contact information and additional policies and additional procedures applicable to California placements during the putative class period.  *Id.*  Plaintiff also propounded, and Defendant answered, interrogatories to show the breakdown of assignment types and work settings within the originally alleged class, including related information pertaining to that breakdown.  *Id.*  Defendant also supplemented information produced previously in the case showing, by employee ID, the daily work hours recorded, the type of service

being provided, the applicable wage rates, and related information. *Id.*

Both parties also proceeded with depositions. Defendant took the deposition of the named Plaintiff. *Id.* at ¶21. Plaintiff took the deposition of Defendant's Director of National Recruiting, and the deposition of Defendant's 30(b)(6) designee on topics including: the work assignments, settings, and job duties of the putative class members; the policies, procedures, and practices pertaining to meal and rest periods; the policies, procedures, and practices pertaining to wages and compensation of putative class members; and the policies, procedures, and practices pertaining to approval and/or payment of overtime and double time, amongst other topics. *Id.*

Plaintiff engaged in further informal discovery as well, interviewing putative class members and obtaining signed declarations in support of her Motion for Class Certification. *Id.* at ¶22.

On June 21, 2024 Plaintiff filed her Motion for Class Certification. *See* ECF No. 41. Thereafter, the Parties met and conferred regarding the potential to re-engage in settlement discussions in advance of the class certification hearing. *See* Konecky Decl. at ¶24. The Parties then participated in a full-day mediation with mediator Michael Loeb on July 2, 2024, following which the mediator issued a mediator's proposal for the proposed class action and PAGA settlement that is the subject of the instant motion. *Id.* at ¶¶24-25. The Parties accepted the mediator's proposal on July 8, 2024. *Id.* at ¶25. Among other things, the current proposed Settlement has a narrower Settlement Class, covers a shorter Settlement Class Period, has a different distribution formula, and has a higher per class member recovery, than the earlier settlement. *Id.* at ¶26.

## IV.   THE COURT'S ORDERS REGARDING PRELIMINARY APPROVAL

On October 10, 2024, the Court issued an Order Conditionally Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 46. Among other things, the Order "conditionally certifie[d] the Class for settlement purposes only" and "appoint[ed] Barbara Grady to serve as Class

Representative, and Joshua Konecky to serve as Class Counsel." ECF No. 46 at 15. With respect to preliminary approval and Rule 23(e)(2)(A) in particular, the Court found that Ms. Grady and Class Counsel adequately represented the Class and that the Settlement Agreement was reached after they obtained an adequate information base through extensive discovery focused on the relevant issues. *Id.* at 18-19. The Court also found that the targeted discovery produced a more refined Settlement Agreement that included a better-defined distribution formula. *Id.* at 19. With respect to preliminary approval and Rule 23(e)(2)(B), the Court found that the "Settlement was reached in this matter after extended, arms-length negotiations between the parties" and that "[t]he parties also substantively refined the Settlement agreement in response to the Court's concerns, raised [in connection with the previous settlement agreements]." *Id.* at 19.

In evaluating the value of the Settlement as measured against the costs, risks, and delay of trial and appeal, the Court observed a significant compromise made against the maximum potential trial recovery, but also recognized that this maximum potential was "an unattainable best-case scenario," in light of factors such as the more realistic violation rates and the challenges in proving wilful, knowing and intentional conduct causing injury for the penalty claims (which made up a significant portion of the maximum potential trial recovery). *Id.* at 21-22. Ultimately, "the Court [was] confident that the [$1,026,206.75][1] recovered for the Class represents a reasonable percentage of the realistic trial recovery." *Id.* at 22. The Court also noted that the "estimated average recovery per Class Member—$897.67 plus any allocation of the

---

[1] Plaintiff's Motion for Preliminary Approval had estimated that the net settlement amount to the Class Members plus the 25% net PAGA payment to the Aggrieved Employees to be $1,026,206.75. *See* ECF No. 44 at 1:28-2:1, 22:24-27. Plaintiff further estimated the net settlement payment on average to be $897.67 per individual, not including the individual PAGA payment to the Class Members who also are PAGA Members. *Id.* at 22:28-23:1.

PAGA payment for PAGA Members—is also a meaningful amount." *Id.* at 22. Finally, the Court found that the Settlement eliminated significant risks of further litigation, including the risk that Plaintiff would not be able to rely on facially unlawful policies, that she might not be able to demonstrate a pattern and practice of wage-and-hour violations, and that she might not be able to win and maintain class certification through trial and a possible appeal. *Id.* at 22.

The Court found that the providing Settlement Class and PAGA Members with their settlement awards automatically, without the need to submit claim forms, was an effective method of distribution. *Id.* at 23. The Court also advised that a second (or even third) round of check distributions may be necessary if the residual remaining after the initial (or second) distribution is sufficient to allow for more than a *de minimis* second payment after subtracting the administrative costs of the additional distributions. *Id.* at 23-24.

In addition, the Court found that the proposed distribution formula, which allocates settlement awards for Class Members in proportion to their work shifts, with the longer work shifts at LAUSD and San Bernardino County being weighted 1.5 times more than the shorter ones at Gingko, and apportions the PAGA payments proportionally based on pay periods, treats class members equitably relative to each other. *Id.* at 25-26. The Court also concluded that the proposed service award of $5,000 to Ms. Grady is not inequitable. *Id.* at 26. The Court further concluded that the arrangement for payment of attorneys' fees not to exceed 25% of the Settlement fund was consistent with the Ninth Circuit benchmark and did not appear to have any collusive red flags, subject to further evaluation after Plaintiff brings her motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(h). *Id.* 24.

The Court then approved JND as the Settlement Administrator and approved the Settlement Notice, subject to the parties including email notice and making other changes to comply with Fed. R. Civ. P. 23(c)(2)(B). ECF No. 46 at 27-28, 29. The parties made these changes as reflected in a supplement to the Motion filed on

October 15, 2024.  *See* ECF No. 47.

The Court further ordered that the parties provide notice pursuant to the Class Action Fairness Act (CAFA) to the relevant state and federal authorities at least ninety (90) days before the Final Fairness Hearing.  *See* ECF No. 46 at 28-29.  The Court also advised that at final approval, the parties "consider separately justifying the PAGA portion of the Settlement, using the distinct standards for approval of PAGA settlements, when moving for final approval."  *Id.* at 26.

In consideration of the Rule 23(e) factors, as supplemented by relevant authority in the Ninth Circuit, "the Court preliminarily conclude[d] that the Settlement Agreements is fair, reasonable, and adequate, and appears to be the product of serious, informed, non-collusive negotiations."  *Id.* at 26.  Before granting final approval, the Court directed the parties to make certain amendments to the Settlement Agreement.  *Id.* at 26, 29.  On October 15, 2024, Plaintiff filed the Supplement to Plaintiff's Motion for Preliminary Approval of Cass Action and PAGA Settlement, which contained the updated Settlement and amended Class Notice containing the changes required for preliminary approval.  *See* ECF No. 47.

On November 13, 2024, the Court preliminarily approved the settlement, granted class certification for the Settlement Class as defined in the Settlement Agreement, and approved Ms. Grady as the Class Representative and Joshua Konecky as Class Counsel to act on behalf of the Settlement Class.  *See* ECF No. 48 at 2.  The Court further approved the form and content of the amended Class Notice, confirmed approval of JND to serve as the Settlement Administrator, and directed the Settlement Administrator and the parties to implement the Settlement in accordance with the terms of the Agreement and the Court's Orders.  *Id.* at 2-4.  The Court also set the final approval hearing and advised as to the matters that will be considered and related procedures.  *Id.* at 4-6.

## V.    ISSUIANCE OF THE SETTLEMENT NOTICE AND CAFA NOTICE

The Declaration submitted by the Settlement Administrator attest to the

Settlement Notice and CAFA Notice being issued in accordance with the terms of the Court's Preliminary Approval Order. *See* Declaration of Alex Williams.

As a preliminary matter, the Administrator attests to providing the notices required by the Class Action Fairness Act (CAFA) on October 25, 2024. *Id.* at ¶¶7-8 and Exhibit A.

Next, the Administrator confirms there were 1,097 unique Class Members in the Class Data provided by Defendant and attests to sending the Notice to each of them at their last known address by U.S. Mail. *Id.* at ¶¶5, 9-10 and Exhibit B. Before sending the Notice, the Administrator performed NCOA address searches for each Class Member with the Post Office. *Id.* at ¶10. The Administrator also will forward any Notices returned as undeliverable to new addresses provided by the Post Office or found through advanced searches (skip tracing). *Id.* at ¶11.

The Administrator also attests to sending the Notice by email to the 1,077 Class Members who had email addresses in the Class Data, with a 98.8% successful delivery rate. *Id.* at ¶¶11-12 and Exhibit C.

Further, the Administrator has established the Settlement Website and toll-free information lines. *Id.* at ¶¶13-19.

## VI.    KEY TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement Agreement include:

- <u>Gross Settlement Amount</u>: The Gross Settlement Amount is $1,658,410. *See* Settlement Agreement, at ¶¶15, 53, attached as Exhibit A to Konecky Decl. The Gross Settlement Amount does *not* include the employer's share of payroll taxes, which Defendant will pay separately in addition to the Gross Settlement Amount. *Id.* at ¶¶12, 15, 63.

- <u>No Reversion</u>: All settlement funds will be paid out, and none will revert to Defendant. *Id.* at ¶53.

- <u>Class Period</u>: The Class Period is March 1, 2020 to March 7, 2023. *Id.* at ¶7.

- <u>PAGA Period</u>: The PAGA Period is July 22, 2020 through March 7, 2023. *Id.* at ¶23.

- <u>Settlement Class</u>: The Settlement Class comprises all those employed as non-exempt, hourly paid nurses by Defendant RCM in California at any time between March 1, 2020 and March 7, 2023 and assigned by RCM to work at COVID-19 testing or vaccination sites for San Bernardino County (including Arrowhead Regional Medical Center), or K-12 schools for LAUSD or Ginkgo. *Id.* at ¶6.

- <u>PAGA Members</u>: The PAGA Members are the subset of Class Members employed by RCM during the PAGA Period, July 22, 2020 to March 7, 2023. *Id.* at ¶20.

- <u>Participating Class Members</u>:  The Participating Class Members are the Settlement Class Members and the PAGA Members. *Id.* at ¶25

- <u>Release by Participating Class Members</u>: The Released Claims are limited to the Participating Class Members and the claims that were pled in the Complaint, based on or arising out of the factual allegations therein, during the applicable Class and PAGA Periods. *Id.* at ¶¶27, 58; *see also* Notice to Class, Exh. B to Konecky Decl. & Exh. 1 to Settlement Agreement at §9.

- <u>PAGA Release</u>: The PAGA Release is limited to the PAGA Members and the claims for civil penalties under PAGA that arise out of or relate to the statutes and regulations pled in the PAGA Notice and Class Action and PAGA Complaint during the PAGA Period.  Settlement Agreement at ¶¶24, 59; *see also* Notice to Class at at §9.

- <u>Net Settlement Amount</u>: The Net Settlement Amount is the Gross Settlement Amount less the Class Counsel Award, Class Representative Service Award, LWDA Payment, and Settlement Administration Costs. Settlement Agreement at ¶18.

- <u>Direct Payments to Settlement Class Members / No Claim Forms</u>: Settlement Class Members who do not opt out of the Settlement will <u>not</u> need to submit claims to receive their pro-rata settlement payment. *Id.* at ¶61. Rather, Individual Settlement Awards and Individual PAGA Payments (i.e., settlement checks) will be automatically sent to all Class Members for whom a valid address can be located either through Defendant's records, and/or by the Settlement Administrator through the National Change of Address database (NCOA) and/or by skip tracing and other research. *Id.* at ¶¶61(a)(i)-(ii).

- <u>Distribution Formula</u>: The distribution formula values the shifts for providing Covid testing and/or vaccinations at Ginkgo K-12 sites at 1.0, and the shifts at LAUSD K-12 sites and San Bernardino County sites at 1.5. *Id.* at ¶61(f). This reflects the lower hours worked at the Ginkgo K-12

assignments, among the other factors discussed below.

- <u>PAGA Payment</u>: The Parties have agreed to pay the California Labor and Workforce Development Agency ("LWDA") and the employees in connection with the claims under the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698, *et seq.* ("PAGA"). Settlement Agreement at ¶54. The Parties have agreed that One Hundred Sixty-Five Thousand Eight Hundred and Forty-One Dollars ($165,841.00)–ten percent (10%) of the Gross Settlement Amount–will be allocated to the resolution of the claims arising under PAGA. Pursuant to Labor Code Section 2699(i), it would be distributed as follows: 25%, or $41,460.25, to the Settlement Class Members and 75%, or $124,380.75, to the LWDA (the "LWDA Payment"). *Id.*[2]

- <u>Tax Allocation</u>: Subject to Court approval, the Parties further agree to the following as a reasonable and fair tax allocation for Individual Settlement Awards: one-third (33%) as alleged unpaid wages subject to all applicable tax withholdings; one-third (33%) as alleged unpaid interest; and one-third (33%) as alleged unpaid penalties. *Id.* at ¶61(g)(ii). Subject to Court approval, the Parties further agree that Individual PAGA Awards shall be allocated as alleged unpaid civil penalties for which an IRS Form 1099 shall be issued. *Id.*

- <u>Class Representative Service Award</u>: The Settlement provides that Plaintiff may seek a service payment not to exceed $5,000.00, subject to Court approval. *Id.* at ¶8. The proposed service payment is approximately 0.3 percent of the Gross Settlement Amount. Konecky Decl. at ¶108.

- <u>Class Counsel Award</u>: Class Counsel's fees and costs are included in the Gross Settlement Amount of $1,658,410. The Settlement provides that Plaintiff may make a motion to the Court for up to twenty-five percent (25%) of the Gross Settlement Amount in attorneys' fees, plus reimbursement of actual, reasonable, costs not to exceed $50,000.00. Settlement Agreement at ¶4.

- <u>Settlement Administration Costs</u>: The costs of settlement administration are included in the gross settlement amount of $1,658,410. *Id.* at ¶33. JND estimates that the administration costs will not exceed $39,220, exclusive

---

[2] The Legislature has since amended PAGA such that 65% of the civil penalties recovered will be distributed to the LWDA and 35% to the aggrieved employees. *See* Cal. Labor Code § 2699(m). However, this new distribution formula applies to cases initiated on or after June 19, 2024. *See* 2024 Cal. Legis. Serv. Ch. 44 (A.B. 2288).

of any second and/or third distribution that may occur. *See Id.* at ¶62; Williams Decl. at ¶26

- <u>Right to Object</u>: Settlement Class and PAGA Members who wish to object to the Settlement have until January 27, 2025—45 days following the issuance of the Settlement Notice—to postmark their Notice of Objection to the Settlement. *Id.* at ¶¶24-25; Settlement Agreement at ¶¶19, 30. The Settlement Notice informed Class and PAGA Members of their right to object and appear at the final fairness hearing. *See* Notice to Class at §12. Class Members may sign or e-sign their objections. *Id.*

- <u>Right to Opt Out</u>: Settlement Class Members who wish to exclude themselves from the Settlement (opt out) have until January 27, 2025—45 days following the issuance of the Settlement Notice—to postmark their Request for Exclusion. *See* Williams Dec. at ¶¶23-24; Settlement Agreement at ¶¶29-30. The Settlement Notice informed Class Members of their right to opt out. *See* Notice to Class at §11. Class Members may sign or e-sign their Request for Exclusion. *Id.* Any Class Member who submits a completed, signed, and timely written Opt-Out shall no longer be a member of the Class, although they still will be PAGA Members and subject to the PAGA Release. Settlement Agreement at ¶29; Notice to Class at § 11; *Arias v Superior Ct. (Dairy),* 46 Cal.4th 969 (2009).

- <u>Right to Challenge Defendant's Records</u>. Settlement Class and PAGA Members who dispute RCM's records with respect to their applicable shifts have until January 27, 2025—45 days following the issuance of the Settlement Notice—to postmark a "Workshift Dispute" with documentation and/or an explanation to show a contrary number of shifts. *See* Williams Dec. at ¶¶23-24; Settlement Agreement at ¶¶36, 61(f)(iv). The Settlement Notice informed Class and PAGA Members of the number of shifts and adjusted shifts applicable to them and their right and procedures for disputing this number, including the ability to submit a dispute electronically with an e-signature. *See* Notice to Class at §7. All shift disputes will be resolved and decided by the Settlement Administrator, with consultation with Defense and Class Counsel as appropriate. Settlement Agreement at ¶36.

- <u>Additional Distributions to Class Members</u>. Class and PAGA Members will have 180 days to cash their checks. If the amount remaining in the Settlement Fund after this check cashing period is sufficient for a second distribution of more than a de minimis payment to the Class Members who timely cashed their first check, the Administrator will make a second distribution in the same proportions as the first distribution. A third distribution will occur if a sufficient amount remains in the settlement

funds after the second distribution. The total remaining in the settlement
fund after the last distribution will be transmitted to a Court-approved cy
pres beneficiary. *See* Settlement Agreement at ¶61(g). As discussed below,
the parties propose the State Bar's Justice Gap Fund as cy pres beneficiary
for the Court's consideration.

## VII. ARGUMENT

### A.  The Court Should Grant Final Approval to the Class Action Settlement

#### 1.  The standards for final approval

As discussed by the Court in its Preliminary Approval Order, Rule 23(e)(2)
provides the standards for court approval of a class action settlement in federal court.
*See* ECF 46 at 16. The Rule provides:

> If the proposal would bind class members, the court may approve it
> only after a hearing and only on finding that it is fair, reasonable, and
> adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately
> represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief
> to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including
> timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3);
> and
>
> (D) the proposal treats class members equitably relative to each
> other.

Fed. R. Civ. P. 23(e)(2).

Additionally, case law from the Ninth Circuit over the past 40 years provides an
overlapping set of factors that may be used as guidance to evaluate whether a
settlement is fair, reasonable, and adequate under Rule 23(e)(2). *See* ECF 46 at 16-

17 (discussing Ninth Circuit factors and guidance offered from same) (citing *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).  These factors include "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."  ECF 46 at 16-17 (quoting *Staton*, 327 F.3d at 959).

The law favors the compromise and settlement of class-action suits on fair and reasonable terms. *See, e.g., Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  As observed by the Court, this "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned" is balanced by the need "to protect the unnamed members of the class form unjust or unfair settlement affecting their rights[.]"  ECF 46 at 16 (quoting *Linney v Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) and *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)).

Final approval of a class action settlement is appropriate when "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and [] the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal citations omitted); *see also In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946-47 (9th Cir. 2011); Fed. R. Civ. P. 23(e).

2. <u>The Class representative and Class counsel have adequately represented the Class</u>

As the Court found at preliminary approval, Ms. Grady and Class Counsel have been adequately representing the class and obtained sufficient information to make

an informed settlement decision.  ECF No. 46 at 18-19.  Indeed, Class Counsel engaged in extensive and targeted discovery to gain a firm understanding of the work assignments of the class members, the job duties of the class members, the policies of RCM, and the competing evidence and arguments as to how RMC's policies impacted the provision of meal and rest periods and timekeeping practices for the nurses in the field.  *See* Konecky Decl. at ¶¶20-22.

The discovery Counsel obtained included: (1) the production of employee handbooks, written policies, timecards, and template emails concerning RCM's expectations with respect to meal periods and timekeeping; (2) interrogatory responses specifying the breakdown of assignment types and work settings for the nurses in the class; (3) the deposition of RCM's Rule 30(b)(6) designee witness and the deposition of RCM's Travel Division Manager, for further detail regarding these subjects; (4) interviews with numerous class members regarding their experiences in the field (some of whom submitted sworn declarations in support of the Motion for Class Certification); and (5) wage and shift data that enabled Plaintiff to run damages calculations for the Class.  *Id.* at ¶¶20-22, 44, 50-52, 78.  In addition, Ms. Grady appeared for a full day of deposition to provide information about her experience working as a nurse for RCM in California during the Covid-19 pandemic.  *See* Grady Decl. at ¶6; Konecky Decl. at ¶¶21, 106.

Since the Court's Preliminary Approval Order, Class Counsel has worked diligently with the Settlement Administrator and cooperatively with Defense Counsel to ensure implementation of the Settlement Notice.  This has included reviewing and providing comments to the final versions of the Class Notice and Settlement Website to ensure compliance with the Settlement Agreement and Preliminary Approval Order, reviewing and commenting on the CAFA Notices, and monitoring implementation of the foregoing.  *See* Konecky Decl. at ¶67.  Class Counsel is committed to continuing to monitor the Settlement and respond to inquiries from any Class Members who may have questions regarding the Settlement as well as their

1  rights and options.  *Id.*  Class Counsel will provide the Court with additional

2  information as to the responses of the Class Members in conjunction with the Reply

3  Brief.  *Id.*

4                    3.    The Settlement was negotiated at arms-length

5        As shown above, the parties were well-informed and well-positioned to

6  negotiate a fair, reasonable, and adequate settlement.  Over the course of the case,

7  the parties and counsel engaged in two full-day mediations with Michael Loeb of

8  JAMS, an experienced class action mediator who is very knowledgeable about the

9  substantive law and procedures applicable to wage and hour cases.  *See* Konecky

10  Decl. at ¶25.  After extensive negotiation, the parties ultimately agreed to a

11  mediator's proposal presented by Mr. Loeb at the close of the second session.  *Id.*  As

12  the Court observed in at preliminary approval, the negotiations also resulted in a

13  refined Settlement that addressed concerns the Court raised earlier.  *See* ECF No. 46

14  at 19.

15                    4.    The relief provided to the Class is fair, reasonable, and adequate

16                          taking into account the strengths, risks, potential exposure, and

17                          other relevant factors.

18        "The proposed settlement is not to be judged against a hypothetical or

19  speculative measure of what might have been achieved by the negotiators."  *Officers*

20  *for Justice*, 688 F.2d at 625 (citations omitted).  Indeed, "it is the very uncertainty of

21  outcome in litigation and avoidance of wasteful and expensive litigation that induce

22  consensual settlements."  *Id.*  Thus, "it is well-settled law that a proposed settlement

23  may be acceptable even though it amounts to only a fraction of the potential recovery

24  that might be available to the class members at trial."  *Nat'l Rural Telecomm's Coop*

25  *v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citing *Linney v. Cellular Alaska*

26  *Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (additional citations omitted)).  That

27  is particularly the case here where the potential recovery is premised on an

28  unattainable 100% violation rate (which does not comport with either side's

1  investigation) and achieving large civil penalties with heightened burdens of proof

2  concerning intent. *See* ECF No. 46 at 21-22.

3      As the Court observed in its Preliminary Approval Order, the competing

4  arguments and potential burdens of proof facing Plaintiff through the various stages

5  of litigation presented various risks confronting Plaintiff with continued litigation

6  through class certification, summary judgment, trial and potential appeals. *See* ECF

7  No. 46 at 22; *see also* Konecky Decl. at ¶¶61. After considering these strengths, risks,

8  delays of further litigation, and potential exposure, the Settlement provides a strong

9  result for the Class. *See* Konecky Decl. at ¶¶50-65.

10      Class Counsel calculated Defendant's potential exposure based on specific

11  information as to the shifts worked, time recorded for the shifts, the client for the

12  shifts, and the hourly wage rate, for each Class Member, as exported by Defendant

13  from its ADP and SAP concur time and payroll systems. *See* Konecky Decl. at ¶44-

14  49. The exposure that Plaintiff calculated, the discounts to this exposure, and the

15  reasoning therefor, are discussed in counsel's Declaration. *Id.* at ¶¶50-65. They also

16  are analyzed in the Court's Preliminary Approval Order. *See* ECF No. 46 at 20-22.

17      After estimated attorneys' fees and costs, the proposed service award, the LWDA

18  payment, and the estimated costs of settlement administration, there will be an

19  estimated $1,027,998.27 for distribution to the Settlement Class and PAGA Members.

20  *See* Konecky Decl. at ¶38.  There are approximately 1,097 Settlement Class

21  Members. *Id.* The average net Settlement Share will be approximately $899.31 per

22  individual, not including the Individual PAGA Payments for the Class Members who

23  also are PAGA Employees. *Id.* [3]

24

25  _____

[3] The Net Settlement and average payments per Class Member and PAGA Member
26  are slightly higher now than at preliminary approval because Plaintiff is not seeking
   the full $50,000 previously estimated for reimbursement of litigation costs.
27  Additionally, the number of Class Members estimated at preliminary approval is the
   same as the number now shown in the Class Data, while the number of shifts is very

28

Under the weighted distribution formula discussed below, the average Settlement Share will be approximately $1,245.86 per individual who worked at "pop-up" sites or LAUSD K-12 sites (not including the PAGA payment); and $615.52 per individual who worked at Ginkgo K-12 school sites. *Id.* at ¶40. The amount will increase or decrease for each Class Member depending upon the number of shifts the Class Member has worked for each assignment type during the Class Period. *See* Settlement Agreement at ¶44.

Further, based on counsel's investigation, the average recovery is a reasonable approximation of the premium wages that might be owed for noncompliant meal and rest periods if the claims were successful on the merits. The weighted average hourly wage for the Settlement Class Members is approximately $38.27. Konecky Decl. at ¶49. In turn, the average recovery per shift worked is $15.92. *Id*. at ¶38. This wage recovery is within the violation rate that Plaintiff's counsel estimated based on their interviews with the Class Members. *Id.* at ¶45.

In the Preliminary Approval Order, the Court found that "the [$1,026,206.75] recovered for the Class represents a reasonable percentage of the realistic trial recovery" and that the estimated individual recoveries are meaningful as well. *See* ECF No. 46 at 22. Additionally, after this case was filed, Defendant hired a "Senior HR California labor specialist" to implement California-specific policies and procedures pertaining to meal and rest periods. *See id*. at ¶66. These policy changes, adopted after the lawsuit, provide an additional benefit that supports final approval.

5.    The Settlement is fair, reasonable, and adequate taking into
account the method of distributing relief to the Class

The Settlement provides a fair and equitable procedure for distributing relief to

nearly the same.  the parties estimated approximately 1,097 Class Members who worked approximately 61,902 Workshifts during the Class Period. *See* Settlement Agreement at ¶68.

the Class.    Class Members who do not opt out will receive their payments automatically by mail without the need to file claims.  *See* Agreement at ¶61.g. Further the Parties have added a procedure for conducting a second (and possibly third) distribution if there is sufficient residual to permit more than a de minimis payment to Class Members who cashed their previous check(s).  *Id.* at ¶61.g.  Any residual remaining after the last distribution will be transferred to a Court-approved *cy pres* beneficiary.  *Id.*

Further, the Settlement Administrator has provided the Court approved Settlement Notice to the Settlement Class Members by mail and email, and will perform skip tracing to resend Notices to Class Members for whom the initial Notice is returned as undeliverable.  *See* Administrator Decl. at ¶¶9-12.  Settlement Class Members will have 45-days to opt out, or to object and/or dispute the calculation of their awards.  *See* Settlement Agreement at ¶¶29-30, 36. Class Members will also be given the opportunity to object to the Settlement and, at the Court's discretion, to appear at the Final Approval/Fairness Hearing to have their objections heard by the Court.  *Id.* at ¶¶19, 30; *see also* Class Notice at §§12, 17.

6.    The Settlement is fair, reasonable, and adequate taking into account the proposed award of attorney's fees

Class Counsel is filing a separate motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(h).  Under the Amended Settlement Agreement, Plaintiff will not seek attorneys' fees above the 25% benchmark in the Ninth Circuit.  *See* Settlement Agreement at ¶4.  In addition, Plaintiff will seek reimbursement of out-of-pocket costs of $47,768.17. *See* Konecky Decl. at ¶103.  To date, Plaintiff has invested more than 920 hours into the case and anticipates that the maximum fee being sought will result in a negative multiplier on the lodestar.  *Id*. at ¶69.  Plaintiff's Motion for Attorneys' Fees and Costs will further discuss the reasonableness of the attorneys' fees and costs being sought.

7.    The proposed Settlement treats Class Members equitably relative to each other

At preliminary approval, the Court concluded that the Settlement Agreement proposed equitable treatment of the Class Members.  *See* ECF No. 46 at 25-26. Indeed, the Parties have proposed a distribution formula that reasonably reflects the differential in the value of claims between those Class Members worked at the "pop up" sites and LAUSD K-12 school sites, on the one hand, versus those who worked at the Ginkgo K-12 school sites, on the other.  Specifically, the proposed distribution formula values the shifts for providing Covid testing at the "pop up" sites and LAUSD K-12 sites at a rate of 1.5 to 1 to those at the Ginkgo K-12 schools.  *See* SA at ¶61.f.i. This reflects the likely differential in average violations incurred by Settlement Class Members given the shorter shifts worked at the Ginkgo sites, as further explained in Class Counsel's Declaration.  *See* Konecky Decl. at ¶43.

Finally, the $5,000 service award sought on behalf of Ms. Grady does not result in an inequitable distribution to the Class Representative.  *See* ECF No. 46 at 26 (citing *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1024 (E.D. Cal. 2019).  The reasonableness of the service award here is further discussed in Plaintiff's separate Motion for Service Award.

8.    The proposed cy pres recipient is appropriate

Paragraph 61(g)(iii)(3) of the Settlement provides that any residual remaining after the final distribution will be transferred to a *cy pres* recipient approved by the Court and that the parties will propose an appropriate *cy pres* with the final approval motion.  The parties propose the State Bar's Justice Gap Fund for the Court's consideration as the *cy pres* beneficiary.  The California Legislature created the Justice Gap Fund in 2006, and it is one of the significant "sources of funding for

1    about 100 legal aid organizations across the state providing free civil legal services."[4]
2    The Justice Gap Fund serves the public, and workers specifically, by "protecting the
3    rights of consumers and workers to avoid fraud and exploitation."  *Id.*  The Justice
4    Gap Fund is an appropriate *cy pres* beneficiary because its mission includes ensuring
5    the enforcement of the California Labor Code and ensuring workers receive all
6    wages earned pursuant to the California Labor Code.  *See Bloom v. ACT*, CV18-6749
7    GW, 2024 Lexis 58314 (C.D. Cal. March 29, 2024)(Reasoning that a non-profit was
8    an appropriate *cy pres* recipient because its mission of "advancing the rights of
9    individuals" that composed the class bore "a substantial nexus to the interests of the
10   Class Members.").

11       **B.    The Court Should Approve the PAGA Portion of the Settlement**

12       PAGA settlements are subject to court review and approval.  *See* Labor Code §
13   2699(s)(2).   Although there is no definitive standard for approval of a PAGA
14   settlement, *see Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp.
15   3d 1074, 1075 (C.D. Cal. 2017)), a number of District Courts in the Ninth Circuit
16   have evaluated PAGA settlements by reference to whether "the settlement terms are
17   fundamentally fair, adequate, and reasonable in light of PAGA's policies and
18   purposes." *Jordan v. NCI Group., Inc*., Case No. EDCV 16-1701 JVS (SPx), 2018
19   WL 1409590, *2 (C.D. Cal. Jan. 5, 2018) (citing cases).   "Those purposes and
20   policies include 'benefit[ting] the public by augmenting the state's enforcement
21   capabilities, encouraging compliance with Labor Code provisions, and deterring
22   noncompliance.'" *Vargas v. Cent. Freight Lines, Inc.*, Case No.: 16-cv-00507-JLB,
23   2017 WL 4271893, at *3 (S.D. Cal., Sept. 25, 2017) (quoting  *O'Connor v. Uber
24   Techs., Inc.*, 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal. 2016)).

25       While a PAGA representative action is distinct from a Rule 23 class action,
26

27   [4]  The State Bar of California, The Justice Gap Fund, https://www.calbar.ca.gov/Access-to-
     Justice/Grants/Justice-Gap-Fund (last visited December 26, 2024).
28

*Flores*, 253 F. Supp. 3d at 1076, the reasons discussed above as to why the Settlement is fair, reasonable, and adequate under Rule 23 also show that the PAGA claims were negotiated at arms-length and with a sufficient information base, and that Counsel's exposure and risk analyses were reasonable.

It also bears noting that Counsel conducted a specific exposure and risk analysis for the PAGA claims. *See* Konecky Decl. at ¶¶48-49. This analysis considered, among other things, arguments concerning the "stacking" of penalties that may be argued by Defendant, arguments concerning whether to apply the $100 or $200 civil penalty, and whether the Court might exercise its discretion to reduce penalties based on a determination that "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory" under Labor Code § 2699(e)(2). *See* Konecky Decl. at ¶63.

The parties' agreement to allocate ten percent of the Gross Settlement Amount to PAGA is also reasonable. Indeed, courts have approved amounts for PAGA penalties within the range of zero to two percent of a settlement amount. *See Hopson v. Hanesbrands Inc*., No. CV–08–0844 EDL, 2009 WL 928133, at *1, *9 (N.D. Cal., Apr. 3, 2009) (approving a PAGA payment of $1,500 from $408,420 Maximum Settlement Amount—0.37%); *Jack v. Hartford Fire Ins.* Co., No. 3:09–cv–1683–MMA(JMA), 2011 WL 4899942, at *1, *6 (S.D. Cal., Oct. 13, 2011) (approving a PAGA payment of $3,000 from $1,200,000 settlement fund—0.25%); *Reed v. Thousand Oaks Toyota*, 56-2012-00419282-CU-OE-VTA, 2013 WL 8118716 (Cal. Super. Ct. Apr. 8, 2013) (1.3%); *Bolton v. U.S. Nursing Corp.*, No. C 12–4466 LB, 2013 WL 5700403, *2 (N.D. Cal. Oct. 18, 2013) (approving $15,000 PAGA allocation from total settlement of $1,700,000—0.88%); *McKenzie v. Fed. Express Corp.*, CV 10-02420 GAF (PLAx), 2012 WL 12882124, at *5 (C.D. Cal. Jan. 23, 2012) ("This allocation represents one percent of the $8.25 million maximum settlement amount, and Plaintiff correctly notes that this is within the zero to two percent range for PAGA claims approved by courts.") (collecting cases).

The Settlement is also divided in accordance with the statute's distribution formula that is applicable to the PAGA claims in this case, which were initiated by Plaintiff's initial notice letter to the LWDA on July 22, 2021.  Under the version of the PAGA that applies to PAGA claims initiated before June 19, 2024, 75% of the civil penalties recovered are paid to the LWDA and the remaining 25% are paid to the aggrieved employees.  *See* Labor Code § 2699(i), Stats.2016, c. 31 (S.B.836), § 189, eff. June 27, 2016.[5]  The parties' compliance with applicable law as to the distribution of PAGA civil penalties is another factor in favor of granting approval of the PAGA Settlement.  *Flores,* 253 F.Supp.3d at 1077; *Echavez v. Abercrombie & Fitch Co., Inc.,* Case No. CV 11–09754–GAF, 2017 WL 3669607, at *4 (C.D. Cal., March 23, 2017).

Finally, on July 26, 2024, the same day Plaintiff filed her Motion for Preliminary Approval in this Court, Plaintiff also provided notice of the Settlement to the Labor Workforce Development Agency, pursuant to California Labor Code § 2699(s)(2).  *See* Konecky Decl. at ¶29, and Exh. Z.  To date, the LWDA has not submitted a comment or objection to the Settlement.  *Id.*  This also weighs in favor of approval.  *See Jordan*, 2018 WL 1409590, at *3; *Echavez v. Abercrombie & Fitch Co., Inc.,* Case No. CV 11–09754–GAF, 2017 WL 3669607, at *3 (C.D. Cal., March 23, 2017)("[T]he Court finds persuasive that LWDA was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition thereto. The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty

---

[5] After the parties reached the Settlement, the Legislature amended the statute such that 65% of the civil penalties recovered will be distributed to the LWDA and 35% to the aggrieved employees. Cal. Labor Code § 2699(m).  However, this new distribution formula applies to cases filed on or after June 19, 2024. *See* 2024 Cal. Legis. Serv. Ch. 44 (A.B. 2288).

1  amount.").[6]

2  **VIII. CONCLUSION**

3      For the foregoing reasons, Plaintiff respectfully requests that the Court enter the

4  accompanying Proposed Order granting Plaintiff's Motion for Final approval of Class

5  Action and PAGA Settlement.

6  **IX.    REQUEST TO BE EXUSED FROM L.R. 11-6.1**

7      This brief contains 8,805 words, which exceeds the brief length limit of L.R.

8  11-6.1.  Plaintiff respectfully requests that the Court make an exception to the length

9  limitation here to allow for the showing at issue and because the Motion is unopposed

10 by Defendant, thereby likely reducing the number of briefs in total.

11

12

13     Dated: December 26, 2024          /s/ Joshua G. Konecky

14                                       Joshua G. Konecky
                                         **SCHNEIDER WALLACE**
15                                       **COTTRELL KONECKY LLP**
                                         *Attorneys for Plaintiff*
16

17

18

19

20

21

22

23

24

---

25  [6] The Aggrieved Employees also received Notice of the Settlement and will have an
    opportunity to object. SA at ¶19; Notice of Settlement at §12.  Under applicable law,
26  however, Class Members will not have an opportunity to object to the PAGA Release
    or opt out of the PAGA portion of the settlement, as this technically belongs to the
27  State of California, which also is receiving notice of the Settlement. *Uribe v. Crown
28  Building Maintenance Co.*, 70 Cal.App.5th 986, 1001 (2021) (citations omitted).

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Joshua G. Konecky*
Joshua G. Konecky