UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GRADY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RCM TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. 5:22-cv-00842 JLS-SHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT (Doc. 49); (2) ATTORNEYS' FEES, AND COSTS (Doc. 50); AND (3) SERVICE AWARD TO CLASS REPRESENTATIVE (Doc. 51)** |

Before the Court are three unopposed Motions filed by Plaintiff: one seeking final approval of the class action and PAGA settlement, another seeking attorneys' fees and costs, and a third seeking a class-representative service award. (Final Approval Mot., Doc. 49; Reply ISO Final Approval Mot., Doc. 54; Fees Mot., Doc. 50; Service Award Mot., Doc. 51.) Having reviewed the papers and held a final fairness hearing on March 21, 2025, the Court now GRANTS Plaintiff's Motions.

## I.    BACKGROUND

The Court detailed the background facts of this action in its Order conditionally granting preliminary approval of the class action settlement ("Conditional Prelim. Approval Order"). (*See* Conditional Prelim. Approval Order, Doc. 64.) In brief, Plaintiff initiated this putative wage-and-hour class action in San Bernardino County Superior Court on February 7, 2022. (Ex. 1 to Notice of Removal ("NOR"), Compl., Doc. 1-1.) Plaintiff alleges that Defendant, a specialty healthcare staffing company that employs traveling nurses, enacted policies and failed to properly oversee California host sites at which nurses were staffed, resulting in violations of California law. (*Id.* ¶¶ 2–4.) Plaintiff brings the following claims on behalf of herself and others similarly situated: (1) unpaid overtime in violation of California Labor Code §§ 510, 1194 and 1198 and IWC Wage Order No. 5; (2) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512(a) and California Code of Regulations tit. 8, § 11040; (3) failure to provide rest breaks in violation of California Labor Code § 226.7 and California Code of Regulations tit. 8, § 11040; (4) failure to pay for all hours worked in violation of California Labor Code §§ 201, 202, 204 and 221–23; (5) failure to keep accurate payroll records in violation of California Labor Code §§ 1174 and 1174.5; (6) failure to furnish accurate wage statements in violation of California Labor Code § 226; (7) failure to timely pay all wages owed on separation under California Labor Code §§ 201–3 (known as "waiting time penalties"); (8) unfair competition in violation of California Business & Professions Code

2

§§ 17200, *et seq.*; and (9) enforcement of the Private Attorneys General Act ("PAGA"),
California Labor Code §§ 2698, *et seq*. (*See* NOR ¶ 3, Doc. 1; Compl. ¶¶ 36–109.)

Defendant removed the action to federal court on May 19, 2022. (NOR.) On
March 3, 2023, Plaintiff filed her first Motion for Preliminary Approval of Class Action
Settlement, which the Court denied, citing five concerns. (First Mot. for Prelim. Approval,
Doc. 28; First Order Denying Prelim. Approval, Doc. 30.) Plaintiff then renewed her
motion, but failed to fully resolve the Court's concerns, particularly those relating to the
Class's ability to meet the commonality requirement of Rule 23(a). (*See* Second Mot. for
Prelim. Approval, Doc. 31; Second Order Denying Prelim. Approval, Doc. 35.) The Court
gave the parties 120 days to address its concerns; long after that 120-day mark, the parties
filed a status report updating the Court about a plan to conduct a survey of Class Members.
(*See* Status Report, Doc. 37.) The Court then ordered the parties to resume litigation,
noting that the partes were using the survey to seek "post-hoc justification of their
settlement agreement." (*See* Docs. 38, 40.)

On July 26, 2024, Plaintiff again moved for preliminary approval of a settlement
agreement. (Mot. for Prelim. Approval, Doc. 44.) After hearing oral argument, the Court
conditionally granted the motion by Order dated October 10, 2024, pending Plaintiff's
submission of an amended Settlement Agreement and Class Notice. (Conditional Prelim.
Approval Order.) There, the Court conditionally certified the following Rule 23(b)(3)
class for settlement purposes: "[a]ll current and former non-exempt employees of
Defendant who were nurses assigned by Defendant to staff COVID-19 testing and/or
vaccination sites for San Bernardino County (including assignments at San Bernardino
County's Arrowhead Regional Medical Center), and at K-12 schools for Los Angeles
Unified School District (LAUSD), or Ginkgo Concentric (Ginkgo) during the Class Period
and who do not submit a timely and valid request for exclusion from the settlement." (*Id.*
at 5–6; *see also* Ex. A to Final Approval Mot., Settlement Agreement ¶ 6, Doc. 49-2.) The
"Class Period" is from March 1, 2020, through March 7, 2023. (Settlement Agreement ¶

7.)  The Settlement also defines a separate PAGA Class—the subset of Settlement Class Members who worked for Defendant during the PAGA Period, from July 22, 2020, to March 7, 2023.  (*Id.* ¶¶ 20, 23.)   On October 15, 2024, Plaintiff submitted her amended Settlement Agreement and Class Notice, which addressed the concerns the Court raised in its October 10, 2024 Order.  (*See* Doc. 47.)  Accordingly, on November 13, 2024, the Court granted Plaintiff's Motion for Preliminary Approval of Class Settlement.  (Doc. 48.)

The Settlement Administrator, JND Legal Administration ("JND"), sent the Settlement Notice to Settlement Class Members on December 11, 2024.  (Reply ISO Final Approval Mot. at 2.)  The deadline to opt-out or object was January 27, 2025.  (Final Approval Mot. at 20; *see also* Settlement Agreement ¶ 30.)   However, PAGA Class Members cannot opt out of the PAGA portion of the Settlement, as the money has been recovered on behalf of the State of California.  *See Uribe v. Crown Bldg. Maint. Co.*, 70 Cal. App. 5th 986, 1001.  Plaintiff represents that the Settlement Class includes approximately 1,097 individuals.  (Final Approval Mot. at 25; Konecky Decl. ISO Final Approval ¶ 38, Doc. 49-1.)

Under the Settlement, Defendant agreed to pay $1,658,410.  (Settlement Agreement ¶ 15.)  That amount will be used to distribute pro-rata payments to Settlement Class Members, to make a PAGA payment to the California Labor Workforce Development Agency ("LWDA"), and to cover payments for attorneys' fees, litigation costs, administration costs, and service awards.  (*Id.*)  The fund is non-reversionary.  (*Id.* ¶ 53.) The Settlement outlines the following amounts for the various categories of payments: (1) $165,841 to address Settlement Class Members' PAGA claims, with 75% of that ($124,380.75) to be paid to the LWDA and the remaining 25% ($41,460.25) to be distributed as payment to PAGA Class Members[1]; (2) attorneys' fees not to exceed 25% of

---

[1] This allocation—75% payable to the LWDA and 25% to the Class Members with viable PAGA claims—is mandated by statute.  *See* Labor Code Private Attorneys General Act of 2004, 2004 Cal. Legis. Serv. ch. 221 (S.B. 1809) (West) (current version at Cal. Lab. Code § (footnote continued)

the fund, or $414,602.50; (3) litigation costs not to exceed $50,000, with Plaintiff actually seeking $47,768.71; (4) Settlement administration costs estimated as $39,220; and (5) a service award for the Class Representative not to exceed $5,000. (*Id.* ¶¶ 4, 8, 22, 33; Konecky Decl. ISO Final Approval ¶ 37.) The remaining amount—approximately $985,977.79 if all other payments are approved—will be distributed to Settlement Class Members as relief for all remaining claims.[2] (Konecky Decl. ISO Final Approval ¶ 38.)

Individual payments for Settlement Class Members and PAGA Class Members will rely on slightly different distribution formulas. The individual PAGA payment will be allotted in proportion to pay periods worked during the PAGA Period. The Settlement Administrator will calculate the total number of pay periods attributable to all PAGA Members during the PAGA Period, divide $41,460.25 by that total number to determine the value per pay period, and then pay each PAGA Member one pay period value per pay period worked. (Settlement Agreement ¶ 61.g; *see also* Konecky Decl. ISO Final Approval ¶ 38.)

Meanwhile, the payment to Settlement Class Members for other claims will be allotted in proportion to the number and length of shifts worked. (Settlement Agreement ¶ 35.) First, the Settlement Administrator will weight all work shifts: because average shift length for Settlement Class Members stationed at a Gingko site was 4.7 hours, compared to 8.4 hours at a San Bernadino County site and 7.7 hours at a LAUSD site, Gingko shifts will be valued as one work shift and shifts at the other locations will be valued as 1.5 work shifts. (*Id.* ¶ 61.f.i; Konecky Decl. ISO Final Approval ¶ 39.) The Settlement

---

2699(m)). After the parties reached the Settlement, the California Legislature amended the statute such that 65% of the civil penalties recovered will be distributed to the LWDA and 35% to the aggrieved employees. Cal. Labor Code § 2699(m). However, this new distribution formula applies only to cases filed on or after June 19, 2024. *See* 2024 Cal. Legis. Serv. Ch. 44 (A.B. 2288).

[2] The Konecky Declaration in support of Final Approval states that the "Net Settlement Amount would be approximately $986,538," however based on the Court's calculations the Net Settlement Amount would be approximately $985,977.79 ($1,658,410 – $165,841 – $414,602.50 – $47,768.71 – $39,220 – $5000 = 985,977.79). (*See* Konecky Decl. ¶ 38.)

Administrator will calculate the total number of weighted work shifts attributable to all Settlement Class Members during the Class Period and determine a weighted work shift value by dividing the net Settlement amount remaining by the total number of weighted work shifts. (Settlement Agreement ¶ 61.f.ii.) Each Settlement Class Member will receive one weighted work shift value per weighted work shift worked. (*Id.* ¶ 61.f.iii.) Plaintiff estimates that this formula will result in a weighted work shift value of $15.92 per shift and an average award of $899.67 per Settlement Class Member.[3] (Konecky Decl. ISO Final Approval ¶ 38.) Settlement Class Members have had an opportunity to dispute the number of work shifts credited by lodging a dispute with the Settlement Administrator within forty-five days of when Class Notice was mailed. (Settlement Agreement ¶¶ 30, 36.) Settlement Class Members will have 180 days from receipt of their individual Settlement payment to cash their check. (*Id.* ¶ 61.g.iii.) JND will make a second, or a third, distribution if the amount remaining in the Settlement Fund after the first check cashing period is sufficient to make more than a de minimis payment to Settlement Class Members who timely cashed their first check. (*Id.*) The total amount remaining in the settlement after the last distribution will be transmitted to a Court-approved *cy pres* beneficiary. (*Id.*) The parties propose the State Bar's Justice Gap Fund as the *cy pres* beneficiary, which has a mission to enforce the California Labor Code and ensure workers receive all wages earned pursuant to that Code. (Mot. at 28.)

In return for the relief described above, Plaintiff and the Settlement Class Members who participate in the Settlement will release certain claims against Defendant, including "all claims … based on or arising out of the factual allegations" in the Complaint, including (1) "all claims for failure to pay minimum wages"; (2) "all claims for failure to pay overtime wages"; (3) "all claims for failure to authorize and permit required rest breaks"; (4) "all claims for failure to provide required meal periods"; (5) "all claims for

---

[3] The average award per Settlement Class Member is slightly higher than it was at preliminary approval because Plaintiff is not seeking the full $50,000 it previously estimated for reimbursement of litigation costs. (Final Approval Mot. at 25 n.3.)

failure to maintain accurate employment records"; (6) "all claims for failure to timely pay wages during employment"; (7) "all claims for failure to pay [] wages earned and unpaid at separation"; (8) "all claims for failure to furnish accurate itemized wage statements"; (9) claims for "violation[s] of California's Unfair Competition Law"; and (10) claims for "civil penalties under [PAGA]." (Settlement Agreement ¶ 27.)

The Court's Preliminary Approval Order concluded that Named Plaintiff Barbara Grady was an adequate Class Representative, and appointed Joshua Konecky to serve as Class Counsel. (Prelim. Approval Order at 2; *see also* Conditional Prelim. Approval Order at 15.) The Court's Preliminary Approval Order approved JND as the Settlement Administrator. (Prelim. Approval Order at 2; *see also* Conditional Prelim. Approval Order at 26–27.)

As of March 12, 2025, JND disseminated notice by U.S mail to 1,102 Settlement Class Members by U.S. mail, 45 of which were ultimately undeliverable, and by email to 1,077 Settlement Class Members, 1064 of which were successfully delivered. (Reply ISO Final Approval at 2; *see also* Final Approval Mot. at 16–17; Supp. Williams Decl. ¶¶ 4, 7, Doc. 54-1.) On December 11, 2024, JND created a case-dedicated website, providing the Settlement Class Members with access to a copy of the Class Notice, case information, case dates, and copies of key documents filed in the action. (Williams Decl. ¶ 13, Doc. 49-35.) JND also created a toll-free telephone number for Settlement Class Members to call and obtain information about the Settlement. (*Id.* ¶ 16.)

On July 26, 2024, pursuant to PAGA, Cal. Labor Code § 2699(l)(2), Defendant apprised LWDA of the Settlement Agreement. (Konecky Decl. ISO Final Approval ¶ 29.) On October 25, 2024, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), under which this Court's jurisdiction was invoked, JND provided notice of the Settlement Agreement and copies of other appropriate documents to each Attorney General, Secretary of State, Secretary of Labor, or equivalent for each state in which a

Settlement Class Member resides, and to the U.S. Department of Justice. (Williams Decl. ¶ 7; *see also* Ex. A to Williams Decl.)

The deadline for any Settlement Class Member to object, dispute the number of work shifts credited, or opt-out has now passed. (Settlement Agreement ¶ 30.) As of March 12, 2025, JND has received no objections, no disputes as to the number of work shifts credited during the class period or number of weeks worked during the PAGA period, and one request for exclusion. (Reply ISO Final Approval at 2; Supp. Williams Decl. ¶¶ 16, 18, 20.) The total charge for JND's settlement administration services is $39,220. (*Id.* ¶ 26.)

## II.    CLASS CERTIFICATION

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(3). (*See* Prelim. Approval Order at 2; Conditional Prelim. Approval Order at 9–15.) Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class. The Court therefore incorporates its class certification analysis from the Conditional Preliminary Approval Order into the current Order. (Conditional Prelim. Approval Order at 9–15.)

## III.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A.    Legal Standard

Before approving a class-action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) provides that a "court may approve" a class action settlement proposal "after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3)[4]; and

(D) the proposal treats class members equitably relative to each other.

These factors were codified in the Federal Rules of Civil Procedure in 2018 in recognition of the fact that "[c]ourts have generated lists of factors to shed light on" the fairness, reasonableness, and adequacy of the proposed settlement. Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment. Indeed, the Ninth Circuit's articulated list of factors has governed settlement approvals in the Circuit for over forty years. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Those factors overlap in many ways with the Rule 23(e)(2) factors, and include: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Here, the Court relies on the Rule 23(e)(2) factors but uses some of the developed guidance regarding the application of the Ninth Circuit's factors where relevant.

In addition to these factors, the Court must also satisfy itself that "settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cleaned up). Accordingly, in any class action settlement, the Court must look for explicit collusion and "more subtle signs that

---

[4] Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (cleaned up).

### B.    Analysis

In its Conditional Preliminary Approval Order, the Court evaluated all the factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Conditional Prelim. Approval Order at 18–26.) The Court determined that all of Rule 23(e)(2)'s factors weighed in favor of approval. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 24.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from the Conditional Preliminary Approval Order into the instant Order. (Conditional Prelim. Approval Order at 18–26.)

However, at the time of preliminary approval, the Court did not evaluate Settlement Class Members' reactions to the proposed Settlement Agreement. *See Staton*, 327 F.3d at 959 (identifying "the reaction of the class members to the proposed settlement" as a factor to consider regarding settlement). In support of final approval, Plaintiff submitted a supplemental declaration from JND detailing Settlement Class Members' responses to the Class Notice. (*See generally* Supp. Williams Decl.) As of March 12, 2025, JND has received no objections, no work shift disputes, and one request for exclusion. (*Id.* ¶¶ 15–20.) Plaintiff confirmed at the hearing on its motion that no further objections, work shift disputes, or requests for exclusion have been received. Considering the absence of objections and one request for exclusion, the Court concludes that this factor, too, weighs in favor of approval. *See Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010, at *5 (C.D. Cal. Dec. 5, 2019) (Staton, J.) (finding that a low number of objections "raises a

strong presumption that the terms of a proposed class settlement action are favorable to the class members." (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008))).

The Court is satisfied that the Settlement meets the Rule 23(e) requirements: the Class Representatives and Class Counsel have adequately represented the Class, the proposal was negotiated at arm's length, the relief provided is adequate, and Settlement Class Members are treated equitably relative to each other. Similarly, having weighed the *Staton* factors and considered the Settlement as a whole, the Court finds that the proposed settlement is fair, reasonable, and adequate.

## IV.    PAGA PAYMENT

Pursuant to California Labor Code § 2699(l)(2), Plaintiff also seeks final approval of the $165,841 PAGA payment, of which $124,380.75 (75%) will be distributed to the California LWDA. (Settlement Agreement ¶¶ 20, 54; Final Approval Mot. at 29–32.) The remaining $41,460.25 (25%) will be distributed pro rata to Settlement Class Members employed by Defendant between July 22, 2020 and March 7, 2023. (Settlement Agreement ¶¶ 20, 54; Final Approval Mot. at 29–32.)

Courts "must evaluate … the adequacy of [a] settlement in view of the purposes and policies of PAGA." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). "Those purposes and policies include 'benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance.'" *Vargas v. Cent. Freight Lines, Inc.*, 2017 WL 4271893, at *3 (S.D. Cal., Sept. 25, 2017) (quoting *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132–33 (N.D. Cal. 2016)); *see also Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 430 (9th Cir. 2015) ("The California Legislature enacted PAGA to permit aggrieved employees to act as private attorneys general to collect civil penalties for violations of the Labor Code.") (internal quotation omitted).

The Court concludes that the $165,841 PAGA payment—ten percent of the Gross Settlement Amount—is reasonable in view of the "purposes and policies of PAGA." *O'Conner*, 201 F. Supp. 3d at 1134.  PAGA's primary purpose to "permit aggrieved employees to act as private attorneys general to collect civil penalties for violations of the Labor Code" is served by the PAGA payment in this case.  *See Sakkab*, 803 F.3d at 430. Furthermore, that the Settlement is divided in accordance with PAGA's distribution formula, and that the LWDA has not submitted a comment or objection to the PAGA Settlement, also weigh in favor of granting approval.  *See Echavez v. Abercrombie & Fitch Co., Inc.*, 2017 WL 3669607, at *3–4 (C.D. Cal., March 23, 2017).  Finally, as recognized in the Court's Order conditionally granting preliminary approval, the Court determines that the relief provided by the PAGA Settlement, and the Settlement distribution formula's equitable treatment of Settlement Class Members relative to each other warrants final approval of the PAGA portion of the Settlement.  (*See* Conditional Prelim. Approval Order at 15–26; *see also* Konecky Decl. ISO Final Approval ¶¶ 47–48.)

Accordingly, the Court GRANTS final approval of the $165,841 PAGA payment.

## V.    ADMINISTRATION COSTS

Plaintiff submitted along with her Motion for Final Approval of Class Action and PAGA Settlement the Declaration of Alexander Williams, Vice President of Operations at JND.  (*See generally* Williams Decl.)  The Williams Declaration represents that JND "seeks approval of the $39,220 in administration costs that were previously estimated for the fees and expenses incurred from the implementation of the Notice Plan through completion of the first distribution." (*Id.* ¶ 26.)  It also explains the efforts JND made to determine the contact information for and to contact the Settlement Class Members, which included sending notice to 1,102 Settlement Class Members via regular mail and to 1,077 individual Settlement Class Members via email.  (*Id.* ¶¶ 9, 11.)  JND also sent CAFA notice to the appropriate Federal and State officials.  (*Id.* ¶ 7.)  Having reviewed the

Williams Declaration, the Court finds that JND's request for administration costs is reasonable.

Accordingly, the Court GRANTS JND's request for $39,220 in administration costs.

## VI.    <u>LITIGATION COSTS</u>

Plaintiff asks the Court to approve reimbursement from the Settlement Fund for litigation costs and expenses in the amount of $47,768.17.  (Fees Mot. at 8.)  "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *Sebastian*, 2019 WL 13037010, at *9 (quoting *In re Omnivision*, 559 F. Supp. 2d at 1048).  Class Counsel have documented filing and service fees, deposition fees and transcripts, postage, travel costs, copying and printing, legal research, and mediation fees.  (Fees Mot. at 22; *see also* Konecky Decl. ISO Final Approval ¶ 104; Ex. C to Konecky Decl. ISO Final Approval, Cost Summary, Doc. 49-9.) Plaintiff represents that the legal research fees included in its cost summary "correspond to the actual costs incurred in conducting legal research specific to this case, rather than a pro-rata or other share of [the] firm's generalized legal research costs."  (Konecky Decl. ISO Final Approval ¶ 105.)  The Court finds the various expenses adequately documented and reasonable.

Accordingly, the Court GRANTS Plaintiff's request for the reimbursement of litigation costs and expenses in the amount of $47,768.17.

## VII.    <u>ATTORNEYS' FEES</u>

Rule 23 permits a court to award "reasonable attorney's fees … that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained.  *See id.* at 942.  Courts must "justify any increase or decrease

from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Here, Plaintiff seeks fees in the amount of $414,602, which is 25% of the total Settlement amount. (Fees Mot. at 2.) For the following reasons, the Court finds the requested award reasonable and GRANTS Plaintiff's request.

### A. Results Achieved

The Settlement Agreement provides for an all-in non-reversionary Settlement fund of $1,658,410. (Settlement Agreement ¶ 53.) In this case, Class Counsel achieved a settlement that represents about 6% of Plaintiff's maximum possible trial recovery, which the Court noted in its Conditional Preliminary Approval Order is "relatively low" compared to other class action settlements approved by district courts in the Ninth Circuit. (*See* Conditional Prelim. Approval Order at 21.) However, in conditionally granting Plaintiff's motion for preliminary approval, the Court noted that the "relatively low" value of the net Settlement fund did not preclude preliminary approval of the Settlement "in light of the risks of continued litigation" and because "the calculations for maximum potential trial recovery represent an unattainable best-case scenario, given that they are premised on

100% violation rates and full recovery of all civil penalties." (*Id.*)  The Court sees no reason to divert from this analysis, and so incorporates it into the present Order.  (*Id.*)  Accordingly, the Court concludes that monetary recovery obtained here, which results in an award of approximately $899.67 per Class Member plus any allocation of the PAGA payment for PAGA Members, weighs in favor of granting Plaintiff's request for attorneys' fees at the Ninth Circuit's 25% benchmark.  (*See* Konecky Decl. ISO Final Approval ¶ 38.)

### B.   Risk of Litigation

The Court found that the risks of ongoing litigation in this case were significant in its Order conditionally granting preliminary approval: Defendant strongly disputes Plaintiff's theory of liability and has defended the lawfulness of its policies, raising the risk that Plaintiff could not rely on facially unlawful policies and would prevail only if Plaintiff was able to establish a pattern and practice of wage-and-hour violations, which presents a high evidentiary bar.  (*See* Conditional Prelim. Approval Order at 22.)  The Court further noted that to achieve recovery at trial, Plaintiff would have to achieve and maintain class certification, even in the face of a possible appeal, and then defeat summary judgment; the Settlement eliminates these risks.  (*Id.*)  Given the risks posed by ongoing litigation here, the Court finds that this factor also weighs in favor of granting Plaintiff's request for attorneys' fees at the Ninth Circuit's 25% benchmark.

### C.   Skills Required and Quality of Work

As noted above, Class Counsel has achieved a good result for the Class after over three years of litigation; however, while the relief obtained is meaningful, it represents a "relatively low" value of the net Settlement fund and reflects neither extraordinary efforts nor a notably superior result.  Moreover, while Class Counsel were surely competent, the docket reflects multiple instances in which they failed to provide the Court with all requisite information or properly present the issues, thus requiring multiple rounds of briefing at the preliminary approval stage and supplemental filings.  That said, Plaintiff

adequately responded to the Court's concerns regarding her first and second motions for preliminary approval and made substantial amendments to the proposed Settlement Agreement following the resumption of discovery and a second-full day mediation. (*See* Konecky Decl. ISO Final Approval ¶¶ 20–22; 75–79; *see also* Conditional Prelim. Approval Order at 5.) In light of the above, the Court finds that this factor also weighs in favor of granting Plaintiff's request for attorneys' fees at the Ninth Circuit's 25% benchmark. (Fees Mot. at 16.)

### D.  Contingent Nature of the Fee

Class counsel spent more than 900 hours litigating this case for over three years. (Fees Mot. at 18; *see also* Konecky Decl. ISO Final Approval ¶ 69; Ex. B to Konecky Decl. ISO Final Approval (Billing Summary), Doc. 49-3.) Class Counsel received no payment for their services during the litigation and paid for all litigation costs. (Fees Mot. at 18; *see generally* Billing Summary.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio*, 291 F.R.D. at 457 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Given the complexity and length of this litigation, as well as the number of hours Class Counsel committed to its prosecution, the Court finds that this factor also weighs in favor of granting the requested fee award.

### E.  Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.

Here, six attorneys, seven paralegals, and one outreach supervisor from the law firm of Schneider Wallace Cottrell Konecky LLP have worked on this matter for a total of 920 hours as of December 26, 2024. (*See* Billing Summary; Konecky Decl. ISO Final Approval ¶ 69.) Plaintiff has submitted with its motion the declaration of Joshua Konecky,

which sets forth the experience of, hours billed, hourly rate, and total estimated fees for each of the six attorneys who worked on the matter, as well as the hourly rates and total hours billed for all paralegals and the outreach supervisor.  (*See generally* Konecky Decl. ISO Final Approval ¶¶ 69–91.)  Class Counsel's request for a fee award at the 25% benchmark represents a 0.60 negative multiplier on its documented lodestar.  (Fee Mot. at 20.)

The lodestar crosscheck first requires the Court to determine whether the hourly rates sought by counsel are reasonable.  "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  This determination "is not made by reference to rates actually charged [by] the prevailing party."  *Id.*  The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (cleaned up).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Courts may also "rely on [their] own familiarity with the legal market."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  As a general rule, the forum district represents the relevant legal community.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

In light of its familiarity with the legal market, the unique challenges posed by this matter, Class Counsel's experience, and the skill and commitment with which they prosecuted the matter, the Court finds that Class Counsel's rates are reasonable.

Next, the Court finds that the detailed billing records Class Counsel attached to their motion offers a satisfactory accounting of the attorney work hours on this case.  (*See*

Billing Summary.)   A review of the records shows that administrative tasks were appropriately delegated to legal support staff and billed at a lower rate.  Furthermore, the presence of partners and associates with experience ranging from over twenty years to five years in practice demonstrates a tendency toward efficient billing.  However, the record also seems to show that discovery-related tasks and initial motion drafting were at times frequently handled by attorneys with higher billing rates.  Still, on balance, the Court is satisfied that the requested fees are not a "windfall" for Class Counsel, particularly given that the total fees requested will result in a negative multiplier of approximately 0.60 on Class Counsel's documented lodestar.  *In re Bluetooth*, 654 F.3d at 942.  (*See also* Fees Mot. at 20.)

Taking into account the *Vizcaino* factors and lodestar crosscheck, the Court GRANTS Plaintiff's request for attorneys' fees in the amount of $414,602.  However, as discussed below, ten-percent (10% ) of the awarded attorneys' fees should be withheld pending further order of the Court following submission of a Post-Distribution Status Report.

## VIII.    CLASS-REPRESENTATIVE SERVICE AWARD

The Settlement provides for a service award of $5,000 to Grady for bringing this action as Class Representative.  (Settlement Agreement ¶ 61.h.)

Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)).  "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'"  *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 977).  Courts "must 'evaluate

[such] awards individually' to detect 'excessive payments to named class members' that
may indicate 'the agreement was reached through fraud or collusion.'" *Id.* (quoting *Staton*,
327 F.3d at 975, 977).

Class Counsel contends the service award is warranted because Grady invested
substantial time and effort on the case, including by "engaging in lengthy interviews …
s[itting] for deposition, search[ing] for documents, appear[ing] at the mediation, and
provid[ing] sworn declarations." (Service Award Mot. at 11; *see also* Grady Decl., Doc.
49-34.) Grady also "reject[ed] … the opportunity to settler her claims individually later in
the case." (Service Award Mot. at 7.)

Grady's contributions have undoubtedly helped bring about monetary relief for the
entire class. The requested amount represents 0.30% of the total Settlement amount and
will be distributed to one Class Representative who has given a significant amount of time
and energy to the litigation. Accordingly, the Court finds that a service award in the
amount requested is appropriate and AWARDS Grady $5,000.

## IX.     POST-DISTRIBUTION STATUS REPORT

Class Counsel shall file a Post-Distribution Status Report within **twenty-one (21)
days** after the substantial completion of distribution of the settlement to Settlement Class
Members, and payment of attorneys' fees and costs, and payment of the service award to
the class-representative. The status report shall include information on when distributions
were made to Settlement Class Members, the number of Settlement Class Members who
were sent payments, the total funds distributed, and the average and median distribution to
Settlement Class Members, the largest and smallest distribution to Settlement Class
Members, the number and value of cashed and uncashed checks, the number and value of
attempted distributions to Settlement Class Members, general information about efforts
made to contact Settlement Class Members regarding attempted distributions, any
significant or recurring concerns communicated by Settlement Class Members since final
approval, the administrative costs, and any other material facts about settlement

19

distribution.  Class Counsel is referred to the Northern District of California's Post-Distribution Accounting Form (https://cand.uscourts.gov/forms/civil-forms/), which it shall fill out in relevant part and submit with its Post-Distribution Status Report.  The Court will withhold **10% of the attorneys' fees** granted in this Order until the Post-Distribution Status Report has been filed.  Class Counsel shall file a proposed order for release of the remainder of the fees when they file their Post-Distribution Status Report.  At that time, Class Counsel shall also submit a request for any remaining balance in the settlement fund to be distributed through *cy pres* payment to the State Bar's Justice Gap Fund, which the Court concludes is a proper *cy pres* recipient in this context given its mission to enforce the California Labor Code and ensure workers receive all wages earned pursuant to that Code.  *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (*cy pres* payments are appropriate if they "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity").

## X.    <u>CONCLUSION</u>

The Court finds the settlement to be fair, adequate, and reasonable.  Accordingly, the Court GRANTS the Motions for (1) Final Approval Of Class Action And PAGA Settlement; (2) Attorneys' Fees, and Costs; and (3) Service Award To Class Representative.  Distribution of settlement payments to Settlement Class Members shall be made in accordance with the method outlined in the Settlement Agreement.  Ten percent (10%) of the attorneys' fees awarded herein shall be withheld pending Class Counsel's submission of a Post-Distribution Status Report within **twenty-one (21) days** after the substantial completion of distribution to Settlement Class Members.  Class Counsel shall submit a proposed order for a final distribution of attorneys' fees with its Post-Distribution Status Report.  Class Counsel is ORDERED to file a proposed final judgment within **five (5) days** of entry of this Order.

DATED:  March 24, 2025

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE